Belt Electric Line Co. v. Allen.

CASE 90—PETITION ORDINARY—January 11.

# Belt Electric Line Co. v. Allen.

### APPEAL FROM FAYETTE CIRCUIT COURT.

1. ACTION FOR DAMAGES—INJURY TO PERSON—PERSONAL EXAMINATION—PRACTICE IN CIVIL CASES.—In an action for damages for permanent injury to the person, the trial court may, in the exercise of a sound discretion, order a surgical examination by experts of the person of the plaintiff, the examination to be ordered and had under the direction and control of the court, if it can be had without danger to the plaintiff's life, or health, and without the infliction of serious pain; and the exercise of the discretion by the trial court may be reviewed upon appeal.

BRONSTON & ALLEN AND BRECKINRIDGE & SHELBY FOR APPELLANT.

1. It is the right and duty of the court in an action for permanent personal injuries to require the plaintiff to submit to a personal examination by experts, as the parties are entitled to the production of the very best evidence that can be had. Walsh v. Sayre, 52 Howard's Practice Reports, 334; Shaw v. Vanrensellear, 60 Howard's Practice Reports, 143; Shroeder v. Railroad Co., 47 Iowa; Sibley v. Smith, 46 Ark., 275; White v. Railway Co., 61 Wis., 536; Railroad Co. v. Childress, 9th S. E. Rep., 602; Thompson on Trials, vol. 1, sec. 859; Sidekum v. Railroad Co., 93 Md., 403; Booth on Street Railways, sec. 407, page 552 and notes; Wood on Railroads, vol. 2, page 1570; Railroad Co. v. Hill, 90 Ala., page 75.

2. It is no answer to this contention of the appellant that two of appellee's physicians examined plaintiff's ankles and testified for her on the trial of the case, because the defendant is en-

titled to have other physicians and surgeons besides those of
the plaintiff examine the injury.

T. T. FORMAN FOR APPELLEE.

1. There was no proper foundation for the motion to require the
   plaintiff to submit to a personal examination; the plaintiff's
   petition was filed in September, 1892, and the first motion to
   require the personal examination was made about two years
   thereafter.
2. But the plaintiff introduced her physician as a witness, and upon
   cross-examination, upon suggestion of the defendant, he made
   personal examination of the plaintiff's ankles, and testified with
   reference thereto, and he thereby became the witness of the de-
   fendant on that subject, and any error which the court might
   have made in overruling the motion theretofore for personal ex-
   amination was cured. Not only this but defendant introduced
   three other physicians who had seen the ankles shortly after the
   injury.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In this action for injuries received from falling through a
trap door left open on the floor of the company's transfer
office or station, the appellee recovered a judgment for $1,400.

Complaint is made of the instructions and the finding of the
jury under the evidence for any sum and especially for the
amount found. The special error complained of, however, is
that the trial court refused the company's request to have
the injured ankle or ankles of the plaintiff examined by
competent surgeons or physicians selected by the company.
Of the various errors suggested other than the last one it is
only necessary to say that the evidence supports the finding,
and the instructions fairly present the issues involved to the
jury.

Whether the boy who left the trap door open was on the
pay rolls of the company or not, he was in charge
of this door, and under the necessity of passing in-

to the cellar through it under the direct command and control of the agents and employes of the company. And even if he had been a stranger the question whether the door had been up such a length of time before the accident as to render the place dangerous to travelers, was left to the jury. Its decision was in effect that it was negligence on the part of the company's agents, whose constant employment was in and about the station, to invite the appellee into the office whilst it was in this unsafe condition.

The question whether a plaintiff in an action for damages for permanent injuries to his person may be required to submit to medical examination has received considerable attention in some of the States, but appears not to have arisen here. It is the contention of the company that such an examination is proper because the law requires in every case the production of the best evidence that the nature of the subject admits of, and will not be satisfied with any evidence where better evidence is withheld or concealed by a party able to produce it. That as the object of judicial inquiry is the ascertainment of the truth, the law will not allow the truth to be sacrificed by concealment of the means of its discovery.

The decisions are not entirely uniform on the subject, but we think the weight of authority is with counsel for appellant, and such physical examination may be demanded in cases where discovery of the truth will more likely result with than without the examination, and the ends of justice be thereby better subserved. The conclusions which the

various courts and some of the text writers have reached are these:

1st. That trial courts have the power to order surgical examination by experts of the person of the plaintiff who is seeking to recover for personal injury.

2d. That the defendant has no absolute right to have an order made to that end, but that a motion therefor, is addressed to the sound discretion of the court.

3d. That the exercise of that discretion will be reviewed on appeal and corrected in case of abuse.

4th. That the examination should be ordered and had under the direction and control of the court, whenever it fairly appears that the ends of justice require the disclosure or more certain ascertainment of facts which can only be brought to light or fully elucidated by such an examination, and that the examination may be made without danger to the plaintiff's life or health and without the infliction of serious pain.

5th. That the refusal of the motion, when the circumstances present a reasonably clear case for examination under the rules stated, is such an abuse of the discretion lodged in the trial court as will demand a reversal of the judgment in plaintiff's favor. (Alabama Southern R. R. Co. v. Hill, 90 Ala., 71—S. C. 24 Am. St. Rep., 764)—1 Thompson trials, section 859; 2 Wood on Railroads, edition 1894, page 1570; Walsh v. Sayre, 52 Howard Practice Reports, 334; Shroeder v. C. R. I. & P. R. R. Co., 47 Iowa, 375; S bley v. Smith, 46 Ark., 275; Sidekum v. Wabash R. R. Co., 93 Missouri, 403). Many other pertinent authorities might be cited, but these are deemed sufficient.

The petition in this case averred a permanent injury, the weakening of the plaintiff's ankle or ankles by dislocation, etc., and the case would seem to be one in which such an examination might the more fully discover the true condition of the affected part. The answer to this, as contended by the plaintiff's counsel, is that such an examination, though at first refused, was allowed the defendant on cross-examination of Dr. Rodes, a witness for the plaintiff. It appears that this witness stated in chief that "he had seen the limb in question some time after the alleged accident; noticed some swelling and some inflammation; that it would be hard to say whether the injury was permanent or not, but that in any event the injured ankle would be more liable to a sprain again than before; that stiffness of the ankle might result, but this might be avoided by passive movement."

On cross-examination the witness said that "the only result of the original sprain existing at this time was some stiffness, which might be the result of the failure to give the ankle the proper amount of passive movement. Saw no reason why the injured ankle was not sound with the exception of some stiffness, and did not think that necessarily of a permanent nature." At this point counsel for the company asked that witness be allowed to examine plaintiff's ankle, and, upon the plaintiff consenting, counsel for both sides and the president of the company retired with the witness and physician. It may fairly be assumed that had counsel requested it their surgeons might have also attended this examination. After examination the witness, continuing his statements on cross examination, stated that "he had

just examined both of plaintiff's ankles and found them alike or very nearly so, and could detect no swelling or dislocation, but discovered some stiffness in the left ankle, which might be relieved by passive movement."

The company also introduced several surgeons, who had examined the plaintiff's ankles shortly after the injury, and their testimony was to the effect that there was no permanent injury unless perhaps a slight stiffness, so that it would seem there was no real dispute about the condition of the ankle which could likely be settled by further examination, nor does it seem to be a case where a more certain ascertainment of the facts could have been elucidated by further examination by experts.

The judgment is affirmed.