CLARENCE FINK, by Next Friend, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, February 5, 1912.

1. ADMISSION: Pleadings: Infants: Infant Not Bound by Allegations in Former Pleadings. In an action against a railroad company by a boy ten years of age, the amended petition alleged that he had jumped upon the ladder of one of defendant's freight cars and while he was riding thereon a brakeman of the defendant threw a large missile at him and commanded him to get off the train while the same was in rapid motion and that in attempting to dodge the missile he slipped and fell under the train, etc. The former petition alleged that the plaintiff at the time of the accident was on the ground, passing along a foot path near the track and that defendant's servant threw at plaintiff and frightened him and that he jumped and dodged and in doing so slipped and fell under the freight train. *Held*, that the attorneys or next friend of the plaintiff had no power to bind the plaintiff, who was an infant, by admissions in his pleadings calculated to prejudice his interests and that the trial court properly refused to instruct the jury that the statements made by plaintiff in his pleadings were presumed to be true.

2. INFANTS: Admissions. An infant is incapable of making an admission which can affect his rights and for a stronger reason the admission of another person made on behalf of the infant cannot affect his rights.

3. PERSONAL INJURY: Railroads: Injury to Trespasser: Sufficiency of Evidence. In an action against a railroad company an infant, ten years of age, sought to recover damages for injuries received while he was a trespasser on one of defendant's freight cars. Plaintiff's cause of action was based upon the theory that while he was in a perilous position, clinging to a ladder on the side of the car, the brakeman, by threatening actions, harsh tones and by throwing at him, frightened him and caused him to dodge, whereby his foot slipped and he fell under the moving train. Plaintiff did not testify. The evidence is examined and *held* sufficient to justify submitting the case to the jury and that defendant's demurrer to the evidence was properly overruled.

4. **EVIDENCE: Verdict: Verdict Must be Based on Substantial Evidence.** The jury should not be allowed to reach a conclusion in favor of the party on whom the burden of proof rests by simply theorizing and conjecturing without having a substantial foundation for their verdict in the evidence.

5. ——: ——: ——: **Duty of Court.** It is part of the duty of the court to determine whether or not the facts shown in evidence have a tendency and fairly justify the inferences and conclusions drawn by the jury as shown by the verdict.

6. **NEGLIGENCE: Injury from One of Two Causes: Burden of Proof.** In an action for damages for personal injuries, where the evidence shows that the injury resulted from either of two causes, for one of which defendant is liable and for the other of which he is not, the burden is upon the plaintiff to offer sufficient evidence to enable the jury to trace the causal connection between defendant's negligence and plaintiff's injury.

7. **JURY: Province in Considering Evidence.** The sufficiency of evidence and the weight thereof and the credibility of the witnesses is left entirely with the jury.

8. **APPEAL AND ERROR: Demurrer to Evidence.** An appellate court in determining whether the evidence is sufficient to withstand a demurrer is required to protect the litigant's constitutional right of trial by jury in passing upon the demurrer. The plaintiff is entitled to have his evidence taken as true and the contradictory evidence of the defendant taken as untrue and is entitled to every reasonable and favorable inference that may be deducible from his evidence, and if when so considered the testimony makes a prima facie case, the demurrer should be overruled.

9. **INFANTS: Negligence: Contributory Negligence.** In actions from personal injuries to a child the law, in its humanity, applies a different rule in considering the question of contributory negligence from that applicable in cases of an adult.

10. ——: ——: ——: **Capacity of Infant.** It is the capacity, not the age alone of an infant that is the criterion of his responsibility.

11. ——: ——: ——: ——: **Instructions.** In an action against a railroad company for injuries to plaintiff, a minor, on account of the brakeman causing him to slip from the ladder on the side of a box car upon which he was riding, it is error for the court to instruct the jury that in determining the question of plaintiff's contributory negligence, they should decide whether or not he was exercising the care that a person of his age would have ordinarily exercised at the time, for the jury should have taken into consideration, not only his age but his

experience and capacity, and his proved capacity to understand the danger to which he was exposed.

12. **RAILROADS: Trespassers: Alighting form Moving Train on Brakeman's Order.** A railroad company is liable to one who in stealing a ride on one of its freight cars in a rapidly moving train, is injured in getting off in obedience to the order of the brakeman, who had authority to put him off and was able to enforce such order.

13. **PLEADING: Negligence: Alleging Specific Acts of Negligence: Burden of Proof.** It has long been the law in this state that in actions for damages for negligence, the petition need only state the negligence in general terms, but when it goes further and unnecessarily charges specific acts of negligence, which caused the injury, the law will not permit the plaintiff to treat such negligence as surplusage, but he must either prove that the injury was caused as alleged or go out of court.

14. **APPEAL AND ERROR: Instructions: Material Error.** Where the chief instruction for the plaintiff is wrong, the court will not hold the error harmless and proceed to affirm the judgment merely because the facts show that plaintiff had a good case.

15. ———: ———: ———: **Trial on Same Theory.** A case on appeal must be disposed of on the same theory on which it was tried below and the appellate court will not assume that the verdict would have been for the plaintiff had the jury been properly instructed.

16. ———: **Presumption That Error is Material.** According to our appellate practice errors apparent in the record raise a presumption that they were material and affected the merits of the action, unless the record affirmatively shows to the contrary.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

REVERSED AND REMANDED.

*Cyrus Crane, J. W. McAntire* and *O. L. Cravens* for appellant.

(1) The demurrer to the evidence should have been sustained because, considering plaintiff's knowledge and capacity it conclusively appears he knew the danger of his act in voluntarily hopping the car

and how to avoid it, and he was, therefore guilty of contributory negligence as a matter of law. Graney v. Railroad, 157 Mo. 666; McGee v. Railroad, 214 Mo. 530; Ridenhour v. Railroad, 102 Mo. 286; Spillane v. Railroad, 135 Mo. 414; Walker v. Railroad, 193 Mo. 481; Deschner v. Railroad, 200 Mo. 328; Payne v. Railroad, 136 Mo. 562; Mann v. Railroad, 123 Mo. App. 491; Hardt v. Koenig, 137 Mo. App. 599; Stegmann v. Gerber, 146 Mo. App. 116; Henry v. Railroad, 141 Mo. App. 351; Witte v. Stifel, 126 Mo. 295. (2) Because under the clear admissions made by plaintiff's petition in the former suit, and in his deposition taken therein, he cannot recover in the absence of full and unquestionable explanations to overcome them; and these explanations were not offered. Smith v. Railroad, 184 Fed. 387; Barber v. Stroub, 111 Mo. App. 57; Richards v. McCormick, 119 Mich. 7, 77 N. W. 1116; Grier v. Canada, 119 Tenn. 17, 109 S. W. 970; Lee v. Calvert, 57 S. W. (Tenn.) 627; Blid v. Blid, 117 N. W. (Neb.) 700; Target Co. v. Pigeon Co., 52 Fed. 385; In re Cogswell & Co., 93 Mo. App. 482; Boettger v. Rochling, 74 Mo. App. 257; Dowzelot v. Rawlings, 58 Mo. 77; Houston v. Railroad, 118 Mo. App. 470; Bond v. Railroad, 110 Mo App. 136; Shanahan v. Railroad, 109 Mo. App. 23; Sepetowsky v. Railroad, 102 Mo. App. 122; Ephland v. Railroad, 57 Mo. App. 147; Shirts v. Overjohn, 60 Mo. 309; State v. Brooks, 99 Mo. 143; Feary v. Railroad, 162 Mo. 106; Cogan v. Railroad, 101 Mo. App. 189; Pratt v. Conway, 148 Mo. 299; St. Louis v. Babcock, 156 Mo. 157; Fiedler v. Bowbrick, 135 Mo. App. 305; Tootle v. Buckingham, 190 Mo. 195; Schultz v. Culbertson, 125 Wis. 169, 163 N. W. 234; 16 Cyc. 1045. (3) Because there is no proof, either by direct evidence or circumstances from which it could be reasonably inferred, that plaintiff fell from the car and was injured as a result of defendant's negligence. Railroad v. Foreman, 174 Fed. 337; Hyer v. Janesville, 101 Wis. 371, 77 N. W.

729; Ryan v. McCully, 123 Mo. 646; Lueke v. Graham, 123 Mo. App. 212; Warner v. Railroad, 178 Mo. 125; Trigg v. Company, 187 Mo. 227; Smart v. Kansas City, 91 Mo. App. 586; Purcell v. Shoe Co., 187 Mo. 276; Breen v. Cooperage Co., 50 Mo. App. 202; Fry v. Transit Co., 111 Mo. App. 334; Hicks v. Railroad, 46 Mo. App. 304; Knorp v. Wagoner, 195 Mo. 665; Myers v. Glass Co., 129 Mo. App. 562; Harvey v. Railroad, 6 Mo. App. 585; Byerly v. Light Co., 130 Mo. App. 593; Manning v. Ins. Co., 100 U. S. 693, 25 L. Ed. 761; Looney v. Railroad, 200 U. S. 480, 50 L. Ed. 564; Yarnell v. Railroad, 113 Mo. 588; Patton v. Railroad, 179 U. S. 658, 45 L. Ed. 361; Catlett v. Railroad, 21 S. W. (Ark.) 1062; Barney v. Railroad, 126 Mo. 372. (4) Instruction No. 1 given for plaintiff is erroneous, because it instructs plaintiff's care to be only such as a person of his age ordinarily exercises. Eswin v. Railroad, 96 Mo. 290; Ruschenburg v. Railroad, 161 Mo. 87; Schmitz v. Railroad, 119 Mo. 276; Moeller v. Railroad, 133 Mo. App. 68; Saller v. Shoe Co., 130 Mo. App. 712; Lougree v. Mfg. Co., 120 Mo. App. 478; Fry v. Transit Co., 111 Mo. App. 333.

*F. H. Lee* and *Thomas & Hackney* for respondent.

(1) For this wrongful act of the brakeman the defendant was clearly liable. Haehl v. Railroad, 119 Mo. 325; Curtis v. Railroad, 99 Mo. App. 507. (2) The defendant's negligence occupies the whole field of culpability to the exclusion of all other acts of negligence and presents itself as the sole producing cause. In such case the contributory negligence of plaintiff but serves to afford the condition for the operation of the final act. Ross v. Railroad, 113 Mo. App. 605. (3) Even if plaintiff had yielded to the command and the assault of the brakeman and had jumped off of the train, he could not have been charged with contrib-

utory negligence, because this was the very thing that
the brakeman was endeavoring to get him to do. Far-
ber v. Railroad, 139 Mo. 282. (4) The principal is
liable for the neglect, fraud or other wrongful act of
his agent in the course of his employment, though the
principal did not authorize the specific act. Garret-
zen v. Duenckel, 50 Mo. 104; Mead v. Railroad, 68
Mo. App. 92; Curtis v. Railroad, 99 Mo. App. 507;
Haehl v. Railroad, 119 Mo. 325; Chandler v. Gloyd,
217 Mo. 415; Bouillon v. Gas Light Co., 148 Mo. App.
473. (5) Admissions in pleadings filed on behalf of
an infant are not binding on him. 22 Cyc. 516, 661,
663; 1 Ency. of Evidence, 460. (6) The admissions
made in a pleading by a guardian *ad litem* or next
friend of an infant are not binding on the infant. Col-
lins v. Trotter, 81 Mo. 281; White v. Joyce, 158 U. S.
146; Knights Templar v. Crayton, 209 Ill. 550, 70 N.
E. 1066.

NIXON, P. J.—The respondent, a boy ten years
of age, sued the appellant by his father as next friend
for damages on account of personal injuries received
on May 19, 1910, in the yards of the defendant com-
pany at Joplin, one of defendant's trains having run
over and crushed his leg in such a way that amputa-
tion was necessary. The trial resulted in a verdict in
favor of the plaintiff in the sum of $2,500 and the de-
fendant has appealed.

The negligent acts of the defendant as charged
in the petition were, in effect, as follows: That the
plaintiff having jumped upon the ladder of one of de-
fendant's freight cars in its yards in Joplin, the train
of which said car was a part was put in rapid motion
and that in consequence of the rapid motion plaintiff
held to the car until the speed of the train should be
so slackened that the plaintiff could dismount with
reasonable safety, and that while plaintiff was in said
position on said car, and while it was dangerous for

him to get off because of the speed at which said car was running, the brakeman of the defendant in the course of his employment for the defendant in the operation of said train, having knowledge of the perilous condition of the plaintiff and of the danger of plaintiff being put off or attempting to get off of said train while in such rapid motion, negligently, carelessly, willfully, recklessly and cruelly assaulted the plaintiff and threw at plaintiff a large substance or missile which had the appearance of a large stone, and negligently, carelessly, willfully and recklessly commanded and directed the plaintiff to get off of said train while the same was in rapid motion as aforesaid, and that the plaintiff being of tender years was so terrified and frightened by said assault and by the throwing of said substance and missile, and by the command of said employee, that he attempted to dodge from said assault and the throwing of said missile, and in so doing plaintiff slipped and fell from said train while the train was in rapid motion as aforesaid, and fell under said train and one of the cars of said train struck the plaintiff and ran over and crushed and mangled his right leg and ankle.

Several witnesses were introduced by the plaintiff; among others, Hazel Adams, who testified that she was in the defendant's railroad yards at Joplin at the time the accident occurred and that she saw the plaintiff down on the railroad track at the time he was injured. That he had his hand and one foot on a railroad box car, and that the man who was on the car in front of said box car threw a handful of gravel at him; that the boy fell and one of his feet went under the train and was run over; that the man who threw at him was a brakeman who was standing on a flat car and that he got the gravel on the car; that he shouted to the boy just before he threw but she didn't know what he said; that he just picked up some gravel and threw it at the boy and hallooed and

the boy fell off the train; that the train was moving at the time,—going towards the depot. The evidence further tended to show that the boy had boarded the train and was riding on the ladder on the freight car in question, holding to the ladder with his hands, and that one or both of his feet were on the lower step of the ladder; that the car was moving at the rate of seven or eight miles an hour at the time the defendant's brakeman (who was on the flat car just ahead of the car on which plaintiff was riding) hallooed at the boy in a harsh tone for the purpose of causing him to get off the car and made a motion and threw some substance or missile at him. He dodged the substance thrown at him, but his foot slipped and he fell under the moving train and was injured. The jury may have inferred from the evidence that the purpose of the brakeman in thus hallooing at the plaintiff and throwing at him was to make him get off the train.

As stated, the accident occurred on May 19, 1910. The suit was commenced against the defendant company for damages on account of said injuries by his next friend on May 21, 1910. The petition then filed was subsequently amended on November 21, 1910. The cause of action as stated in this petition and its amendment was a substantially different narrative of the facts in regard to the accident than that contained in the present petition which was filed on May 12, 1911, the first suit having been voluntarily dismissed by the plaintiff. The former petition alleged that the plaintiff at the time of the accident was on ground passing along a footpath near the defendant's railroad track while the defendant's freight train was passing north, and that the defendant's servant and agent threw at the plaintiff a large stone; that when he threw it he hallooed, thereby frightening the plaintiff and causing him to jump and dodge from the said stone, and that without any fault on plaintiff's part

he slipped and fell under the freight train which was passing on the defendant's west track, by which the plaintiff was run over and his right leg and ankle mangled and crushed. The amended petition stated that the defendant's brakeman while attempting to warn the plaintiff from his danger in coming in contact with the moving train negligently threw at plaintiff a substance or missile which had the appearance of a large stone and hallooed loudly at the plaintiff causing him to take fright and jump and dodge said missile, thereby causing him to slip and fall, by which he was drawn under the train and one of its cars struck him and ran over and crushed his right leg.

These petitions were introduced in evidence by the defendant, without objection, as a part of its defense, and as appeared therefrom the first petition was based on the theory that at the time plaintiff was injured he was not on the train at all but was on the ground, and that some words passed between the brakeman and the boy when the brakeman threw something at him and he dodged and was sucked beneath the train.

After the first petition had been filed, the defendant (on June 18, 1910) took the deposition of the injured boy and in said deposition the plaintiff in great detail by his testimony fully corroborated the statements contained in the original petition and its amendment. At the trial of this case, the plaintiff was not introduced as a witness and did not give his testimony. It was not shown that there was any mistake, inadvertence, or oversight by the plaintiff, his father as next friend, or his attorneys, in regard to the statements in the petition or the testimony given by the plaintiff in his deposition, or why there was a discrepancy between the original petition and the evidence given by the boy to sustain it, and the cause of action as stated in the present petition; so that there is an irreconcilable conflict between the statement of the facts attend-

ing the accident in the first petition and the evidence taken thereunder, and the petition in the present action, and without explanation except as to the showing of the mental condition of the plaintiff at the time his deposition was taken. Dr. Evans in behalf of the plaintiff stated that at the time the plaintiff's deposition was taken he was suffering from chorea, commonly known as St. Vitus' dance, and that he was very nervous and jerked as persons do with that disease. Further, "I think any person who is a sufferer from chorea in the condition that the boy then was would be mentally unbalanced and not capable of expressing anything that could be depended upon; that in his then condition he was incompetent to answer questions and I would not believe his statements unless corroborated by other evidence."

At the conclusion of the evidence, the defendant asked an instruction to the effect that the jury might take into consideration the fact of the plaintiff not testifying and might consider such fact as an unfavorable presumption against him because he had been charged by the defendant company with changing the facts upon which he based his cause of action. The defendant also asked the court to give the following instruction: "Any statement proved by the defendant to have been made by plaintiff by deposition *or pleading*, if any such have been proved, against the interest of the plaintiff and while possessed of sufficient intelligence to understand the effect of questions and answers thereto is presumed in law to be true because said and stated against his interest. What plaintiff may have said in his own favor, you are not bound to believe, but you may reject or believe the same as you may find the same true or false under all the evidence. And in this connection you are further instructed that the burden of proof is upon the plaintiff to show by the greater weight of credible evidence that plaintiff did not at the time of making statements to

his counsel, if any, or deposition, if any, have sufficient intelligence to truthfully and correctly state the facts in relation to the accident, and unless it is so proven you are justified in finding that he had sufficient intelligence to understandingly make such statements, if any." The court, over defendant's objection, modified this instruction by striking out the words "or pleading" (found in the second line), and then gave it.

The question arises whether the plaintiff, being an infant ten years of age, could employ counsel and authorize them to make admissions in his behalf in the drawing and filing of pleadings; and, whether the admissions in the pleadings filed in his behalf by his next friend were binding upon him.

The general rule is established, almost without exception, that the representative of an infant, whether guardian or attorney, has no power to bind the infant by admissions in his pleadings and thereby prejudice his interests. Ralston v. Lahee (Iowa), 74 Am. Dec. 291; Lloyd v. Kirkwood, 112 Ill. 329; Rucker v. Bean, 65 Me. 352; Collins v. Trotter, 81 Mo. 275; White v. Joyce, 158 U. S. 128, 146; Knights Templar & M. L. I. Co. v. Crayton (Ill.), 70 N. E. 1066, 1071; 1 Ency. Evi. 460. An infant is incapable of making an admission which can affect his right; and *a fortiori,* the admissions of another person cannot affect an infant's rights. [22 Cyc. 516.] It follows from these authorities and others that might be cited that no error was committed by the court in its refusal to give these instructions.

The appellant further urges that its demurrer offered at the conclusion of all the evidence should have been sustained on the ground that the evidence given in the case, taken as a whole, considered either as direct or circumstantial, failed to show that the injury was the proximate result of the defendant's negligence.

It will be seen that the theory of the plaintiff's recovery as stated in his petition was that while he was a trespasser on one of defendant's freight cars going at the rate of seven or eight miles an hour, and was in a perilous position, clinging to the ladder on the side of the car, the brakeman by his threatening acts in hallooing at him in a harsh tone and in throwing at him, frightened him, causing him to dodge, whereby his foot slipped and caused him to fall under the moving train. The defendant's statement of the specific charges of negligence contained in the plaintiff's petition is not quite accurately summarized in its brief when it says that it is charged by plaintiff that the brakeman frightened and terrified the plaintiff as a child to such an extent that he fell under the train. The specific question of fact which the jury were required by the contending parties to determine was, specifically, whether the throwing of the gravel and hallooing of the brakeman so frightened the plaintiff as to cause him, volutarily or involuntarily, to dodge the missile, and his foot to slip, by reason of which he fell under the moving train. The defendant claims that the plaintiff put himself in a perilous position by clinging to the ladder on the side of the car, and that it is as consistent with the facts of this case that he was shaken from his position by the moving train, or that he voluntarily relaxed his hold on the ladder, as that the injury was caused by the tortious acts of the brakeman, and that the conclusion that the injury was caused by the conduct of the defendant's brakeman has no basis of fact in the evidence but rests solely upon conjecture of the jury, and that the defendant's demurrer presented the the conclusion of all the evidence ought to have been sustained by the court.

The law is well established that there must be some substantial evidence tending to establish circumstances from which a jury will be warranted in finding that the inferences as to the defendant's liability clear-

ly preponderate,—otherwise the question is one of law for the court; that the jury should not be allowed to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing without a substantial basis of fact, and must have a substantial foundation for their verdict in the evidence, and that the shifting sands of conjecture and suspicion are not sufficient. [Hyer v. City of Janesville (Wis.), 77 N. W. 729.] These statements recognize firmly anchored legal principles.

The negligence charged in the plaintiff's petition is an affirmative fact of which plaintiff carries the burden of proof, and it is to be established by a preponderance of the evidence before he can recover. This may be shown from inferences from facts once proven, but the facts from which the inferences are drawn must be established by the evidence; and it is a matter of law, and a part of the duty of the court, to determine whether or not the facts shown in evidence have such a tendency and fairly justify the conclusions. [Ryan v. McCully, 123 Mo. l. c. 646, 27 S. W. 533; Warner v. Railroad, 178 Mo. 125, 77 S. W. 67; Trigg v. Ozark Land & L. Co., 187 Mo. 227, 86 S. W. 222.] But before an appellate court can consider the question of negligence, it must determine that the facts are indisputable and that but one legitimate legal inference may be drawn from them. These rules, applied to the facts of the present case, do not permit us to say that the negligence of the plaintiff was a question of law. The evidence tended to show that the defendant's brakeman, standing within a few feet of the boy, in a harsh voice hallooed at him and in a threatening manner threw gravel at him when he was in an exposed condition, clinging perilously to the side of the car then moving some seven or eight miles an hour; and the inference, it seems to us, is a fairly legitimate one—and the conclusion does not arise on mere suspicion or conjecture—that his dodging was

caused by fright occasioned by such tortious acts of the defendant's brakeman.

But the defendant further contends that the causal connection does not logically follow by the mere proof of negligence, and that the reasoning that what comes after is caused by what went before does not apply. The law requires the plaintiff, where there are two causes, to show with reasonable certainty which of the two causes produced the injury, and if the evidence shows the it resulted from either of two causes, for one of which the defendant is liable and for the other of which he is not liable, the plaintiff is then required to show to which of these causes the injury was due; the plaintiff must offer sufficient evidence to enable the jury to trace the causal connection between defendant's negligence and plaintiff's injury. If the witness, Hazel Adams, is to be believed, the plaintiff slipped, and this was the immediate cause of his falling beneath the moving train. And if it is true that the plaintiff's falling was caused by fright produced by the brakeman, the plaintiff is required to show with reasonable certainty that it was fright, and not an accident, that caused him to fall. [Warner v. Railroad, supra; Smart v. Kansas City, 91 Mo. App. 586; Purcell v. Tennent Shoe Co., 187 Mo. 276, 86 S. W. 121.] But the sufficiency of the evidence and the weight thereof and the credibility of the witnesses by which their conclusions are to be reached is left entirely with the jury, and it is for them to determine whether the evidence was sufficient to show the liability of the defendant as charged in the petition. In an action for damages on account of negligence, if the evidence is susceptible of two inferences, one exculpating and the other inculpating the defendant, the question is one of fact for the jury. But the appellate court in determining whether the evidence is sufficient to withstand a demurrer is required to protect the litigant's constitutional right of trial by jury, and in disposing of

a demurrer to the evidence the unbending and cardinal rule hedging about such right of trial by jury is applied that the defendant's evidence so far as it contradicts the plaintiff's evidence fills no office; that the plaintiff is entitled to have his evidence taken as true and the contradicting evidence of the defendant taken as untrue, and he is allowed every reasonable and favorable inference naturally deducible from his own evidence, or the uncontradicted evidence, and if, when so considered, the testimony makes a prima facie case, the demurrer should be overruled. [Phelan v. Paving Co., 227 Mo. l. c. 704, 127 S. W. 318; Hollweg v. Bell Tel. Co., 195 Mo. l. c. 165, 93 S. W. 262; State v. Baldwin, 214 Mo. l. c. 308, 113 S. W. 1123; Mockowik v. Railroad, 196 Mo. 550, 94 S. W. 256.] When the relations between the plaintiff and the defendant's brakeman at the immediate time of the accident are considered, under the rules above announced governing appellate courts, we think the trial court was authorized to submit the plaintiff's cause of action to the arbitrament of the jury and committed no error in overruling the defendant's demurrer to the evidence.

The appellant further claims that the evidence is uncontradicted that plaintiff was guilty of contributory negligence and that recovery should have been denied on that ground.

Although considering plaintiff's knowledge and capacity, it should have appeared that he knew the danger of his act in voluntarily getting upon the car and how to avoid it, and although he stayed upon the car while it continued to accelerate its motion without any effort to get off, such facts would not relieve the defendant's servants of their duty towards the boy. And notwithstanding the plaintiff, under the circumstances had been guilty of negligence in getting upon or remaining upon the car, yet if defendant's servants, after they knew the perilous condition of the boy, by failure to exercise ordinary care caused the injury,

the defendant is liable. In actions for personal injuries to a child, the law in its humanity applies a different rule in considering the question of contributory negligence from that applicable in case of an adult, and in some courts this rule is carried so far as to make it the duty of the court, without being requested, to so declare the law.

The appellant objects to the giving of the plaintiff's instruction No. 1 which is as follows:

"The court instructs the jury that if they find from the greater weight or preponderance of the evidence that on or about the 19th day of May, 1910, plaintiff was an infant of about the age of ten years, and that plaintiff got upon and on to one of defendant's freight trains then on one of the tracks of the defendant's railroad at Joplin, and that said train was put in rapid motion moving to the north, and that plaintiff in consequence of said rapid motion of said train held on to the car which he had mounted; and if you further find that it was dangerous for plaintiff to be put off of said car or to attempt to get off of said car owing to the rapid motion of said train, and if you find it was in rapid motion, and that while plaintiff was so on said train holding on to the said car and while said train was in rapid motion, if it was in rapid motion, one of defendant's brakemen in the course of his employment and in the line of his duty in the operation of said train, and having knowledge of the perilous condition of plaintiff and of the danger of plaintiff being put off or attempting to get off of said train while same was in rapid motion, negligently, carelessly, willfully and recklessly threw at plaintiff some missile or substance as though to injure plaintiff, and negligently, carelessly, willfully and recklessly commanded or directed plaintiff to get off of said train while same was in rapid motion as aforesaid; and if you further find that the plaintiff was of tender years and became so terrified and frightened by said assault and command

of said brakeman that he attempted to jump or dodge from said assault and the throwing of said substance, *and in so doing, plaintiff, while in the exercise of such care as a person of his age at that time ordinarily exercises,* slipped and fell from said train while same was in rapid motion as aforesaid, and fell under said train and one of the cars of said train struck plaintiff and ran over and crushed and mangled his right foot and ankle so that it became necessary to amputate the same and same was amputated in consequence thereof, then you will find the issues in favor of the plaintiff, even though you may further find and believe from the evidence that plaintiff was a trespasser on said train.'' (The italics are ours.)

It will be seen that the court by this instruction required the jury to determine whether at the time the plaintiff slipped and fell he was exercising ordinary care, and that they were to determine this question by his age. This was clearly erroneous. It is the capacity, not the age, of an infant that is the criterion of his responsibility; that is, the individual infant is singled out and his conduct is measured by his own acts—whether it was such as was ordinarily careful for one of his capacity and age, and not of his age alone, and the standard stated in this instruction was not the legal standard. The jury in determining whether plaintiff exercised care or was negligent should have been authorized to take into consideration not only his age, but his experience and capacity, as factors, and his proved capacity to understand the danger to which he was exposed, and should not have been limited in this consideration to the care usually exercised by a boy of his age. [Schmitz v. Railroad, 119 Mo. l. c. 276, 24 S. W. 472; Saller v. Friedman Bros. Shoe Co., 130 Mo. App. 712, 109 S. W. 794; Longree v. Jackes-Evans Mfg. Co., 120 Mo. App. 478, 97 S. W. 272.]

The respondent contends that this clause of the instruction was wholly superfluous and unnecessary to plaintiff's recovery, and that if the plaintiff had yielded to the command and assault of the brakeman and jumped from the moving train, he would have been chargeable with contributory negligence because this was the very purpose of the brakeman; that it was not necessary that the boy should be actually forced from the train, but that it is the settled law of this state that the defendant as principal is civilly liable for the wrongful or negligence act of his agent acting within the scope of his employment. The railroad company is liable to one who is stealing a ride on its freight cars on a rapidly moving train if he gets off and is injured in obedience to the order of the brakeman who had authority to put him off and was able to enforce such order. [Farber v. Railroad, 139 Mo. 272, 40 S. W. 932.] But the respondent is confronted with the allegations of his petition and the instructions given in his behalf and the theory on which he tried the case. The petition pleads specific acts of negligence of the defendant's brakeman in commanding him to leave the train and throwing missiles at him while he was in a perilous position on the side of the car which so frightened him as to cause him to dodge and that the movement in dodging caused him to slip and thereby brought about the injury. The rule has long been established in this state that in actions for damages for negligence the petition need only state the negligence in general terms; but when it goes farther and unnecessarily charges specific acts of negligence which caused the injury, the law will not permit the plaintiff to treat such allegations as surplusage, but, having alleged specific acts of negligence as causing the injury, plaintiff must either prove that the injury was caused as alleged or go out of court. [Orcutt v. Century Building Co., 201 Mo. l. c. 443, 99 S. W. 1062; Kirkpatrick v.

Street Ry. Co., 211 Mo. 1. c. 83, 109 S. W. 682.] Another principle is equally well established that although the chief instruction for the plaintiff was wrong, yet if the facts show plaintiff had a good case, the appellate court will not hold the error harmless and proceed to affirm the judgment. A case on appeal must be disposed of on the same theory on which it was tried below, and the appellate court will not assume that the verdict would have been for the plaintiff had the jury been properly instructed. Such a proceeding would invest an appellate court with jurisdiction to try and determine cases in the same manner as the trial courts. A verdict cannot be made to rest upon a theory that was not submitted to the jury. [Degonia v. Railroad, 224 Mo. 564, 123 S. W. 807.] According to the appellate practice in Missouri, errors apparent in the record raise a presumption that they were material and affected the merits of the action unless the record affirmatively shows the contrary. [Bindbeutal v. Street Ry. Co., 43 Mo. App. 1. c. 468; Morton v. Heidorn, 135 Mo. 608, 37 .S. W. 504; 7 Cyc. 783.] The plaintiff, having pitched his own battle lines, and invited the defendant to a legal combat on grounds that he had himself deliberately selected, must stand or fall in the appellate court by the position he had chosen. As to whether the plaintiff was in the exercise of ordinary care at the time he fell from the side of the moving train, under the pleadings and instructions of the plaintiff, was a question that the defendant had a right to demand should be presented by proper instructions to the jury. The legal standard was not the intelligence of a boy of his age, but the experience, capacity, and intelligence of the plaintiff himself as presented by the evidence offered in the trial. Dr. Evans, an expert witness for the plaintiff, testified: "Q. Doesn't he (plaintiff) appear to be an average bright boy for his age? A. Yes, he is what I would call an average roustabout. Q. One of the boys that run around the

streets? A. A boy that can take care of himself ordinarily." This was the standard that the plaintiff fixed by his own evidence. It follows that the giving of the instruction was material error.

Other objections are made by the appellant to the instructions given and refused by the court, but a careful consideration fails to reveal any material error committed therein except as hereinbefore stated.

For the reasons herein appearing the judgment is reversed and the cause remanded. All concur.